JAMES SIMPSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61434. Promulgated June 21, 1934.

*Clay Judson, Esq.*, for the petitioner.
*J. R. Johnston, Esq.*, for the respondent.

OPINION.

BLACK: This proceeding is for a redetermination of deficiencies in income tax for the calendar years 1927 and 1928 in the respective amounts of $16,639.74 and $6,070.25, determined against petitioner, an individual residing in Chicago, Illinois.

The petition alleges that the entire amount of the deficiencies is in controversy. The parties, however, have filed a stipulation in which they agree that a certain item in the amount of $52,356.71 received by petitioner in 1927 should be taxed as a capital net gain at 12½ percent, and that the additional tax thereon is the amount of $6,544.59. Petitioner has also conceded two other errors assigned in the petition regarding the disallowance by the respondent as deductions claimed by petitioner of certain real estate taxes for 1927 in the amount of $3,338.75, and of certain contributions for 1928 in the amount of $385. This leaves for our determination the sole remaining question of whether the respondent erred in holding that income, amounting to $30,274.86 in 1927, and $30,000 in 1928, received by the Northern Trust Co. as trustee for petitioner's three sisters is taxable to petitioner, the grantor of the several trust estates, under the provisions of section 219 (g) of the Revenue Act of 1926, and section 166 of the Revenue Act of 1928.

The facts were stipulated. The stipulation recites that the income sought to be taxed to petitioner with respect to which the sole remaining question relates was all derived from the trust estates created by an indenture made on July 19, 1923, between petitioner, as party of the first part, and the Northern Trust Co. of Chicago, Illinois, as trustee and party of the second part. This indenture, consisting of six articles, is incorporated herein by reference. In the first article petitioner "being desirous of establishing and creating the trusts hereinafter mentioned" sells, assigns, transfers, and sets over unto the trustee 3,000 shares of the common class A stock of Marshall Field & Co. "subject to the terms and provisions of this Indenture." In the second article the trustee is given the power and authority to receive and collect all the income from the corpus, to sell, transfer, and assign any of the corpus, and to invest and reinvest the proceeds thereof and any undistributed net income derived therefrom, "provided, however, that no change shall be made by said trustee in the securities or obligations held in trust by it without the written direction or approval of the said party of the first part so long as he shall be living and able to act in the premises * * *." The third article provides that the 3,000 shares of stock shall be divided by the trustee into three equal parts, which shall be held and administered as separate trust estates for the benefit, respectively, of petitioner's three sisters, "Subject, however, to the conditions, limitations and provisions hereinafter set forth * * *." The fourth article provides that each beneficiary is to receive the net income from her trust estate as long as she shall live. Article fifth is quoted in full, as follows:

(1) The said party of the first part shall have power to terminate the said several trusts hereby created, or any or either of them, on the 31st day of December, A. D. 1924, or on the 31st day of December of any subsequent year, by giving sixty (60) days previous notice in writing of such termination to the said trustee, and unless so terminated each of said three trusts shall cease, terminate and be at an end upon the death of the beneficiary entitled to receive the income therefrom, as hereinbefore set forth.

(2) Upon the termination of each of said several trusts the trust estate held by said trustee under the trust so terminated shall immediately revert to and vest in said first party, his heirs, devisees or assigns.

(3) The said several trusts hereinbefore created are established for the purpose of providing support and maintenance for the several beneficiaries entitled under the terms of this indenture to receive the income therefrom, and therefore no beneficiary under this indenture shall have any power to anticipate, assign or part with any beneficial interest which she shall at any time be entitled to under the provisions of this indenture, nor shall the same be subject to be taken from such beneficiary by process of law.

The last article of the indenture dated July 19, 1923, provides for the administration of the trust estates by the trustee, the latter's compensation therefor, and the appointment of a successor in trust in the case of the resignation of the trustee therein named.

The last paragraph of the stipulation filed by the parties is as follows:

(b) Although the respondent reserves the right to object to the materiality of any of the facts set forth in this subparagraph (b) [NOTE: No objection was raised], it is agreed that all of the income which the Bureau of Internal Revenue is seeking to tax to this petitioner was paid out during both the years 1927 and 1928 by the Trustee pursuant to the provisions of said Indenture to the beneficiaries of the trusts named therein, namely Martha S. Stevens, Jane B. Krebs and Grace Hosmer. It is further agreed that neither of the trusts created by this Indenture, the income from which is in question in this case, was terminated during either of the years 1927 or 1928, but that all continued in effect throughout all of both years. It is further agreed that no income whatever was received by the Trustee under said trust Indenture in either of said trusts for distribution or otherwise on the calendar day December 31, 1927, or on the calendar day December 31, 1928.

Section 219 (g) of the Revenue Act of 1926, and section 166 of the Revenue Act of 1928 are identical, and provide as follows:

Where the grantor of a trust has, at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor.

Petitioner contends that in accordance with the fifth article of the trust indenture he could revoke only on the 31st day of December of any given year, by giving 60 days' previous notice in writing of such termination; that he did not, therefore, have the power, " at any

time during the taxable year " to revest in himself title to any part of the corpus of the trust, but had such power only on the last day of the taxable year, provided the required 60-day notice was given prior thereto; and that, in any event, to tax petitioner on the income in question would be in violation of the Fifth Amendment to the Constitution, and of other provisions and amendments thereof. Petitioner concedes, however, that if there had been any income on the last day of each of the years before us, such income would be taxable to him under the sections of the statutes above quoted.

The respondent contends that the power which the grantor reserved, by virtue of the fifth article of the indenture, to revest in himself title to the corpus of the trust estates comes within the provisions of sections 219 (g) and 166, *supra;* and that the income of the trust estates is, therefore, taxable to the grantor, the petitioner herein.

Section 219 (g) of the Revenue Act of 1926 and section 166 of the Revenue Act of 1928 do not violate any provision of the United States Constitution. *Corliss v. Bowers*, 281 U.S. 376; *Reinecke v. Smith*, 289 U.S. 172.

The trust estates which petitioner created by the indenture dated July 19, 1923, were revocable by himself alone, and not in conjunction with any other person. The test as to whether the income from such trust estates is taxable to petitioner under sections 219 (g) and 166, *supra*, depends upon the provision made in the trust instrument itself as to the time when the revocation could be made. If the revocation could be made within the taxable year, the income is taxable to the grantor. *Corliss v. Bowers, supra; Clapp v. Heiner*, 51 Fed. (2d) 224; *Reinecke v. Smith, supra.* If, however, the revocation could not be made within the taxable year, as is the case when an advance notice to revoke is required to be delivered to the trustee during the preceding year and no such notice is delivered, the income is *not* taxable to the grantor. *Lewis v. White*, 56 Fed. (2d) 390; *White v. Lewis*, 61 Fed. (2d) 1046; *Langley v. Commissioner*, 61 Fed. (2d) 796; *Faber v. United States*, 1 Fed. Supp. 859; *Mabel A. Ashforth et al., Executors*, 26 B.T.A. 1188.

The trust estates involved in the instant proceeding fall within the class where the revocation could be made within the taxable year. The instrument creating the trust estates clearly reserved this power to the grantor wherein it provided that " The said party of the first part [the petitioner herein] shall have power to terminate the said several trusts hereby created, or any or either of them, on the 31st day of December, A.D. 1924, or on the 31st day of December of any subsequent year, by giving sixty (60) days previous notice in

writing of such termination to the said trustee * * *." Here the notice, if given, and the revocation, if exercised, would both occur during a single taxable year. In other words, petitioner had reserved to himself alone the power to revoke in any taxable calendar year after 1923. But petitioner argues that, because he could only revoke on December 31 of any given year, his power was not one that could be exercised " at any time during the taxable year " as that phrase is used in the respective statutes. This is the same argument that was rejected by the Circuit Court of Appeals for the Third Circuit in *Clapp* v. *Heiner, supra,* wherein the court in interpreting the words " at any time " concluded that " the context refers to the conditional happening of an event which may occur *one or more* times." [Italics supplied.]

The phrase " at any time during the taxable year " was continued in section 166 of the Revenue Act of 1932, but was changed in section 166 of the Revenue Act of 1934 to read merely " at any time " thereby omitting the words " during the taxable year." In explaining this change the Conference Report relating to the Revenue Bill of 1934 said:

Amendments Nos. 96 and 97. Under existing law, the income from a revocable trust is taxable to the grantor only where such grantor (or a person not having a substantial adverse interest in the trust) has the power within the taxable year to revest in the grantor title to any part of the corpus of the trust. Under the terms of some trusts, the power to revoke cannot be exercised within the taxable year, except upon advance notice delivered to the trustee during the preceding taxable year. If this notice is not given within the preceding taxable year, the courts have held that the grantor is not required under existing law to include the trust income for the taxable year in his return. The Senate amendments require the income from trusts of this type to be reported by the grantor. The House recedes.

If petitioner's interpretation of the words " at any time " were correct, the income from the trust estates here involved would not. even under the Revenue Act of 1934, be required to be reported by the grantor, for the reason that petitioner could only revoke on December 31 of any given year and not on any of the other 364 days of such year. We think it is plain, however, that such is not the correct interpretation to be applied, and that the instant proceeding is controlled by the cases of *Corliss* v. *Bowers; Clapp* v. *Heiner;* and *Reinecke* v. *Smith,* all *supra.* It follows that the income, amounting to $30,274.86 in 1927, and $30,000 in 1928, received by the Northern Trust Co. as trustee for petitioner's three sisters is taxable to petitioner.

*Decision will be entered under Rule 50.*